IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2025

## STATE OF TENNESSEE v. WILLIAM COUCH

**Appeal from the Criminal Court for Sullivan County**
**No. S75904, S75905      James F. Goodwin, Jr., Judge**

_____

### No. E2024-01655-CCA-R3-CD

_____

The Defendant, William Couch, pled guilty to two counts of theft of property. The trial court imposed an effective ten-year sentence and placed the Defendant on supervised probation. While on probation, the Defendant absconded from supervision and committed new misdemeanor offenses. Following a revocation hearing, the trial court revoked his suspended sentences and ordered him to serve the balance of those sentences in confinement. On appeal, the Defendant contends that the trial court abused its discretion by declining to impose a lesser sanction, such as reinstatement to probation or split confinement. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which KYLE A. HIXSON and STEVEN W. SWORD, JJ., joined.

Andrew J. Gibbons, District Public Defender; and Randall D. Fleming, Assistant District Public Defender, for the appellant, William Couch.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Matthew Darby, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    THE UNDERLYING OFFENSES

Relevant to this appeal, the Defendant pled guilty on October 13, 2022, to two counts of theft of property. The trial court sentenced the Defendant to an effective term of ten years, suspended to probation supervised through the Department of Correction ("the Department").

In November 2023, the Department filed a violation report alleging that the Defendant absconded from supervision and committed several additional technical violations. After the Defendant was arrested, the Department filed a second violation report in February 2024, alleging that the Defendant had been convicted of misdemeanor theft and possession of drug paraphernalia the month before. The trial court conducted a revocation hearing on September 11, 2024.

### B.    THE REVOCATION HEARING

At the hearing, the Defendant admitted to the violations and requested to be heard as to the consequence determination. The Defendant testified that he applied to participate in the Sullivan County Recovery Court but was denied admission due to his criminal history. He was later interviewed for possible acceptance into the Tennessee Recovery Oriented Compliance Strategy ("TN-ROCS") program. During that interview, the program representative asked about his criminal history and substance use, and he admitted to having a severe substance-use issue. He told the court that he had repeatedly overdosed— seven or eight times within the past few years—and that his primary drugs of choice were methamphetamine and fentanyl. The Defendant said that he wanted an opportunity to enter treatment and "do something different this time."

During cross-examination, the Defendant admitted that he was on misdemeanor probation when he committed the underlying thefts for which he was now on probation. He initially claimed not to know the individuals who supplied him with controlled substances, but eventually admitted that his girlfriend was one of the suppliers. The Defendant also admitted that probation officers attempted multiple home visits that were unsuccessful because he had moved without notice. When asked about his failure to attend

the scheduled mental-health and substance-abuse assessments, the Defendant stated that he did not recall being given the appointments.

At the conclusion of the hearing, the trial court reviewed the Defendant's record and the circumstances surrounding the violations. During that review, the trial court identified that the Defendant committed new theft and paraphernalia offenses while absconding from probation. It also found that he had not taken advantage of earlier opportunities for treatment and had failed to appear for court-ordered assessments addressing mental-health and substance-use concerns. Additional inconsistencies in the Defendant's testimony led the court to determine that his claim of not knowing his drug suppliers was untruthful, particularly in light of his later admission that his girlfriend had supplied him. It emphasized that "one of the foundational tenets of recovery is honesty" and concluded that the Defendant was "not being honest with the court."

Relying on these findings, the trial court concluded that the Defendant was not ready or willing to engage in genuine rehabilitation and was not an appropriate candidate for a treatment-based alternative. It therefore revoked the suspended sentences and ordered him to serve the effective term in the Department of Correction.

The trial court entered the written revocation order on September 12, 2024. The Defendant filed a notice of appeal forty-eight days later.[1]

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case concerns the propriety of the trial court's decision to fully revoke the Defendant's suspended sentences.

---

[1] Pursuant to Tennessee Rule of Appellate Procedure 4(a), the Defendant had thirty days, or until October 12, 2024, to file a timely notice of appeal. However, on October 4, 2024, the Tennessee Supreme Court entered a disaster recovery order in response to the tragic September 2024 flooding in upper East Tennessee. *See In re Limited Disaster Plan for Trial Courts in First, Second, Third, and Fourth Districts*, No. ADM2024-01498 (Tenn. Oct. 4, 2024) (Order), available at https://perma.cc/3PQ3-NKG2. This order extended all appellate filing deadlines by forty-five days for cases from Sullivan County, among other places. As such, we conclude that the Defendant's notice of appeal, which was filed on October 30, 2024, was timely filed.

We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.* In this case, because the trial court made sufficient findings on the record to support its decisions regarding the violation and consequence determinations, we review those decisions for an abuse of discretion, applying a presumption of reasonableness.

## ANALYSIS

The Defendant argues that the trial court abused its discretion by ordering full revocation rather than imposing a lesser sanction. He asserts that his violations stemmed from substance-use disorder and instability, and he maintains that the court did not give sufficient consideration to his request for placement in a recovery-based program. He contends that treatment in the community would better serve his rehabilitation than continued incarceration.

The State responds that the Defendant committed multiple non-technical violations, including new criminal offenses, absconding, and repeated failures to comply with supervision. It argues that the Defendant admitted the violations and that the record reflects a persistent pattern of noncompliance and relapse. The State maintains that the trial court reasonably found the Defendant unsuitable for continued community supervision and acted within its discretion in ordering full revocation. We agree with the State.

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b) (2025). The trial court may also require the defendant to comply with various conditions of probation, provided that those conditions are suitable for facilitating rehabilitation or protecting the community's safety. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of [a] probation sentence, however, 'is [the] rehabilitation of the defendant,' . . . and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996))), *no perm. app. filed*; *see also* Tenn. Code Ann. § 40-28-302(1) (2025).

As long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *See State v. Rand*, 696

S.W.3d 98, 106 (Tenn. Crim. App. 2024). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d) (2025). As such, the nature of a probation revocation proceeding entails a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. The first step is to determine whether the defendant has violated a condition of probation, and the second is to determine the appropriate consequence of that violation. *Id.*

## A. THE VIOLATION DETERMINATION

As to the first step, a trial court may not find a violation of probation unless the record establishes the violation by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Williams*, 673 S.W.3d 255, 259 (Tenn. Crim. App. 2023). A defendant's admission to a violation is sufficient to support such a finding. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999); *see also, e.g.*, *State v. Penny*, No. W2023-00912-CCA-R3-CD, 2024 WL 1803264, at *2 (Tenn. Crim. App. Apr. 25, 2024), *perm. app. denied* (Tenn. Oct. 25, 2024).

The probation revocation statutes distinguish between technical and non-technical violations, and the consequences for each type of violation differ. *See* Tenn. Code Ann. § 40-35-311(e); *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022), *no perm. app. filed*. When a probationer commits a non-technical violation, the trial court's authority to impose a consequence is broad, and the court may fully revoke a suspended sentence even if the probationer has no history of prior violations. *See* Tenn. Code Ann. § 40-35-311(e)(2); *Rand*, 696 S.W.3d at 103-04. A non-technical violation includes, among other things, absconding and committing a new felony or Class A misdemeanor offense.[2] Tenn. Code Ann. § 40-35-311(g).

In this case, the Defendant was on probation for two felony theft convictions, and he admitted at the revocation hearing that he committed new Class A misdemeanor theft and drug paraphernalia offenses while on probation. He also does not dispute that he absconded from supervision, which constitutes an independent non-technical violation under the statute. The record therefore supports the trial court's finding that the Defendant committed three non-technical violations of probation, any one of which authorized the

---

[2] If the new criminal conduct consists of a Class B or C misdemeanor, the trial court may fully revoke a defendant's suspended felony sentence when the conduct results in a fourth or subsequent revocation. *See* Tenn. Code Ann. § 40-35-311(e)(1); *Penny*, 2024 WL 1803264, at *2.

court to revoke his suspended sentences in full. *See, e.g.*, *State v. Evans*, No. E2024-00392-CCA-R3-CD, 2025 WL 354637, at *3 (Tenn. Crim. App. Jan. 31, 2025) (affirming the finding of a violation where the defendant admitted committing new crimes and did not challenge the violation finding on appeal), *no perm. app. filed.*

## B.   THE CONSEQUENCE DETERMINATION

As to the second step, "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *Rand*, 696 S.W.3d at 106 (citation and internal quotation marks omitted). As the supreme court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *See Dagnan*, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation. Tenn. Code Ann. § 40-35-102(3)(C) (2025); *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*. A trial court may also consider whether the violation shows that the defendant is a danger to the community or individuals in it. Tenn. Code Ann. § 40-28-302(1).

### 1.   Nature and Seriousness of the Violation

The trial court identified three principal reasons for fully revoking the Defendant's suspended sentences. The first concerned the nature and seriousness of the Defendant's violations, a consideration expressly permitted by *Dagnan*. *See Dagnan*, 641 S.W.3d at 759 n.5. The Public Safety Act of 2016 directs trial courts to evaluate whether a probationer can "remain compliant and crime-free in the community" when selecting an appropriate consequence. Tenn. Code Ann. § 40-28-302(2). Consistent with that directive, this court has long recognized that "where the probationer continues to commit new crimes, the beneficial aspects of probation are not being served." *State v. Everett*, No. E2022-00189-CCA-R3-CD, 2022 WL 16643628, at *4 (Tenn. Crim. App. Nov. 3, 2022) (citation omitted), *no perm. app. filed*.

The record supports the trial court's conclusion that the Defendant's violations were serious. While on probation for two felony theft convictions, the Defendant committed new misdemeanor theft and drug paraphernalia offenses. As this court has explained, a

defendant who continues to commit the same type of criminal conduct for which he or she is on probation "shows that the Defendant cannot or will not abide by the first rule of probation: maintaining lawful conduct." *Evans*, 2025 WL 354637, at *4 (citation and internal quotation marks omitted).

In addition, the Defendant committed the new offenses while he had absconded from supervision. To be clear, absconsion from supervision is a serious violation. The "reporting requirement is among the most basic requirements of any supervised probation program[.]" *In re A'Reeyon L.*, No. E2017-00261-COA-R3-JV, 2018 WL 618705, at *5 (Tenn. Ct. App. Jan. 30, 2018), *no perm. app. filed*. The whole purpose of requiring some level of supervision is to ensure that a defendant is engaging in rehabilitative efforts and to allow others to intervene when these efforts are not successful. *See State v. Butler*, No. W2023-00566-CCA-R3-CD, 2023 WL 8234319, at *8 (Tenn. Crim. App. Nov. 28, 2023), *no perm. app. filed*. To that end, a probationer's willful absconsion shows that he or she has little regard for the rehabilitative orders of the court and is unwilling to engage in rehabilitative efforts. *See Everett*, 2022 WL 16643628, at *4. Indeed, because supervision may be essential to aid a probationer's rehabilitation and to protect public safety, a probationer's failure to voluntarily comply with supervision may reflect poorly on the probationer's "suitability for further probationary efforts." *State v. Chatman*, No. E2000-03123-CCA-R3-CD, 2001 WL 1173895, at *2 (Tenn. Crim. App. Oct. 5, 2001), *no perm. app. filed*.

In this case, the Defendant's absconsion prevented his probation officers from either assisting with treatment resources or monitoring stability factors such as housing and employment. During the absconsion, the Defendant did not engage in substance-use treatment and continued his pattern of theft and drug crimes. In these circumstances, we conclude that the trial court properly considered the nature and seriousness of the violations as part of the consequence determination. *See State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022) (recognizing that a trial court may assess a defendant's likelihood of complying with rehabilitative orders and the suitability of continued community-based treatment when the defendant commits new offenses while absconding), *perm. app. denied* (Tenn. Feb. 8, 2023).

### 2. Lack of Amenability to Community-Based Rehabilitation

Second, the trial court considered the Defendant's lack of amenability to community-based rehabilitation, a factor likewise authorized by *Dagnan*. *See Dagnan*, 641 S.W.3d at 759 n.5. We have recognized that "the real purpose of the consequence

determination is to reexamine the original decision to suspend the sentence and, through the lens of a defendant's post-judgment conduct, examine whether community-based efforts can still be effective for rehabilitation and community safety." *State v. Robinson*, No. E2024-00176-CCA-R3-CD, 2024 WL 4554688, at *4 (Tenn. Crim. App. Oct. 23, 2024), *no perm. app. filed*. This requirement derives from the Public Safety Act, which directs the trial court to consider full revocation of a suspended sentence when a probationer's risks "cannot be appropriately managed in the community." Tenn. Code Ann. § 40-28-302(1). In fact, the court may only consider alternatives to full revocation when interventions exist that "may assist the offender to remain compliant and crime-free in the community." *Id.* For this reason, the consequence determination "is not merely focused on the probationer's rehabilitative needs alone," but also on whether those needs "can be effectively addressed *in the community* rather than in custody." *State v. Banning*, No. E2022-00188-CCA-R3-CD, 2022 WL 10225186, at *5 (Tenn. Crim. App. Oct. 18, 2022) (emphasis in original), *no perm. app. filed*; *State v. Tobin*, No. E2022-00604-CCA-R3-CD, 2023 WL 176108, at *5 (Tenn. Crim. App. Jan. 9, 2023), *no perm. app. filed*.

The Defendant's conduct here demonstrated that further community-based rehabilitation efforts were unlikely to be successful. Although he acknowledged a significant substance-use disorder and expressed interest in treatment, he failed to appear for appointments to assess his mental health and substance-use needs, each of which represented the first step in addressing his addiction-related issues. His absconsion further prevented supervision officers from providing services, arranging treatment, monitoring his progress, or ensuring accountability.

Given the Defendant's repeated refusal to engage in available treatment, the trial court concluded that rehabilitation in the community would not likely be successful. The record supports the trial court's reliance on the Defendant's lack of amenability to community-based rehabilitation and its decision to revoke probation rather than continue those efforts. *See Penny*, 2024 WL 1803264, at *4 ("[R]ehabilitative efforts cannot be 'reasonably feasible' when the defendant does not voluntarily comply with those efforts. Thus, when a trial court weighs whether to *continue* rehabilitative efforts, it may certainly consider whether the defendant will voluntarily comply with the court's orders.").

### 3.     Lack of Honesty in Court Proceedings

Third, the trial court considered the Defendant's lack of honesty during the hearing, a factor properly considered under *Dagnan*, which identifies the probationer's "character" as a relevant consideration. *Dagnan*, 641 S.W.3d at 759 n.5. Our courts have long

recognized that candor is essential to rehabilitation. In the sentencing context, a defendant's "[c]andor is a relevant factor in assessing a defendant's potential for rehabilitation, and the lack of candor militates against the grant of probation." *State v. Souder*, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002) (citation omitted). Even false statements made outside of sworn testimony may be significant, because dishonesty "is an important measure in determining whether a probationary status is effective on this particular probationer." *State v. Wolford*, No. 03C01-9708-CR-00319, 1999 WL 76447, at *8 (Tenn. Crim. App. Feb. 18, 1999), *perm. app. denied* (Tenn. Sept. 20, 1999).

In this case, the trial court found that the Defendant's testimony contained repeated inconsistencies. As one example cited by the court, the Defendant initially stated that he did not know the identity of any drug supplier, but after continued questioning, he admitted that his girlfriend had supplied him with methamphetamine. The trial court viewed this inconsistency as proof of dishonesty and emphasized that honesty is a "foundational tenet[] of recovery." Given these findings, the trial court reasonably concluded that the Defendant's lack of candor weighed against further rehabilitative efforts on probation. *See, e.g.*, *State v. Drake*, No. E2024-00165-CCA-R3-CD, 2024 WL 4719132, at *9-10 (Tenn. Crim. App. Nov. 8, 2024) (affirming reliance on the defendant's admission that he lied in treatment to find that he was not amenable to rehabilitation), *no perm. app. filed*.

Considering the seriousness of the Defendant's violations, his demonstrated lack of amenability to community-based rehabilitation, and his lack of candor before the trial court—all factors expressly permitted by *Dagnan*—we conclude that the trial court acted within its discretion in determining that the beneficial aspects of probation were no longer being served. The record supports the court's conclusion that continued probation was not appropriate and that service of the ten-year sentence in the Department of Correction was warranted.

### 4. Defendant's Request for a Lesser Sanction

Pushing against a full revocation of his suspended sentences, the Defendant argues that the trial court failed to give sufficient weight to his application to TN-ROCS and that incarceration "carries a greater burden on the [Defendant] than necessary for rehabilitation." However, our role on appeal is not to decide whether the trial court selected the "best" or most lenient option in the range of possible consequences. *See State v. Thompson*, No. M2023-01424-CCA-R3-CD, 2024 WL 3549189, at *4 (Tenn. Crim. App. July 26, 2024) (citing *State v. Willis*, 496 S.W.3d 653, 729 (Tenn. 2016)), *no perm. app. filed*. Instead, our task is to determine whether the trial court applied the correct legal

standards, supported its findings with evidence in the record, and exercised its discretion by making a reasoned choice among the acceptable alternatives. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Here, the record supports the trial court's determination that additional community-based efforts would not be reasonably effective. Given the Defendant's absconsion, new crimes, and demonstrated unwillingness to comply with the conditions of supervision, we conclude that the court acted within its discretion in fully revoking his suspended sentences. The Defendant is not entitled to relief.

## CONCLUSION

In summary, we hold that the record supports the trial court's determination that the Defendant committed non-technical violations of his probation. We further hold that the trial court acted within its discretion in fully revoking the Defendant's suspended sentences as a consequence of those violations. Accordingly, we respectfully affirm the judgments of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE